**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TITUS SHIELDS,** | ) | **CIVIL ACTION NO.** |
| | ) | **2:24-cv-00014-WSH** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BEAVER CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

**I.    PRELIMINARY STATEMENT**

By this action, Plaintiff, Titus Shields, seeks wage loss, compensatory and punitive damages, costs, attorneys' fees, pre and post-judgment interest because Beaver Co. discriminated against him due to his race, complaints of race discrimination, and reports of wrongdoing to Beaver Co in violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. §2000,  42 U.S.C. § 1983, Pennsylvania Whistleblower Law, 43 P.S. §§ 1421-1428, and Wrongful Discharge in violation of Public Policy. Beaver Co. tolerated blatant race discrimination against Officer Shields, a corrections officer, and Black inmates. Officer Shields moved to Western Pennsylvania from California seeking a better life but instead had to endure horrific racism including but not limited to the use of the "n" word directed towards him, and the vandalization of Officer Shields' vehicle with the letter "n" carved into his car. Officer Shields was told that he belonged in an inmate uniform because of his race, Black. And a fellow corrections officer openly told Officer Shields that he was "racist." Officer Shields heard from Black inmates about being beaten unfairly and having privileges revoked. Officer Shields

reported race discrimination faced by himself and the inmates. He was told to get over it and fired a short time later.

## II.    JURISDICTION

1.    This Court has jurisdiction of this matter by virtue of 28 U.S.C. § 1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States.

2.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a civil action in which jurisdiction is not founded solely on diversity of citizenship, and the acts constituting a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

3.    On February 13, 2023, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") against Defendant, alleging gender discrimination and retaliation.  Plaintiff's Charge was dual-filed with the Pennsylvania Human Rights Commission (hereinafter "PHRC").[1]

4.    The EEOC and the U.S. Department of Justice Civil Rights Division issued a Notice of Right to Sue Letter to Plaintiff on November 20, 2023. This Complaint has been filed within ninety (90) days of the Plaintiff's receipt of the letter, thus making this action timely.

## III.    PARTIES

5.    Plaintiff is Titus Shields (hereinafter "Officer Shields"), an adult individual who resides in Beaver Co.

6.    Officer Shields identifies as African American.

7.    Defendant Beaver Co. (hereinafter "Beaver Co") is 6000 Woodlawn Rd., Aliquippa, PA 15001.

---

[1] Once the administrative requirements have been exhausted, Plaintiff intends to amend this Complaint to include two additional counts under the PHRA.

8.      Defendant employs more than 50 employees.

9.      At all relevant times, Beaver Co is an employer within the definition of Title VII.

10.     At all relevant times Beaver Co. is an employer within the definition of 43 P.S. §§ 1421-1428.

11.     At all relevant times, Beaver Co. is a governmental entity within the appropriate definition of 42 U.S.C. § 1983.

12.     At all relevant times, Officer Shields was an employee of Beaver Co within the definition of Title VII, 42 U.S.C. § 1983, and 43 P.S. §§ 1421-1428.

## VI.     STATEMENT OF CLAIM

13.     On or about February 22, 2022, Officer Shields started working for Beaver Co. as a corrections officer at the Beaver Co. Jail.

14.     Officer Shields was an excellent employee who received positive feedback until he started reporting race discrimination.

15.     Almost immediately Officer Shields started experiencing harassment because of his race.

16.     On or about March 9, 2022, Officer Shields' vehicle was vandalized.

17.     On or about March 10, 2022, Officer Shields witnessed a Sergeant remove an inmate's mattress and bedding while the weather was close to freezing and cold air blew into the cell. The inmate was also placed in a restraint chair without explanation. The inmate was forced to sleep on a metal bed frame from approximately March 10, 2022, until March 18, 2022. Officer Shields felt that the punishment was extreme and unwarranted but was not permitted to intervene.

18.    On or about April 17, 2022, Officer Shields was told he could not work overtime during the holidays by Officer Robert Hickman even though other officers were permitted to do so.

19.    Officer Shields faced further harassment.

20.    On or about April 25, 2022, Officer Shields made a complaint of racial discrimination to Sergeant Mary Harris, Deputy Warden Ethel White, and the Warden William Sheouppe. Officer Shields stated that he no longer felt safe in the environment. Deputy Warden  White told Officer Shields to "get over it, it's not about you." Officer Shields was shocked.

21.    After the conversation with Deputy Warden White, Sergeant Harris privately informed Officer Shields, "Yes, it is very racist here" and "You have got to watch your back." She cautioned Officer Shields against reporting further incidents stating: "These people do a lot of dirt and can get away with it. So just keep your head down and you will be alright." Sergeant Harris identifies as Black.

22.    Officer Shields faced further harassment from Officer Hickman.

23.    Officer Hickman identifies as white.

24.    On or about April 30, 2022, Officer Shields learned that Officer Hickman had given his full name and address to inmates at the Beaver Co. Jail. Officer Hickman allowed inmates to read what Officer Shields wrote in the pod logbook.

25.    On or about April 30, 2022, Officer Shields filed a grievance and complaint about Mr. Hickman's specific targeting of Officer Shields with Warden, Deputy Warden White, Sergeant Harris, and Officer Delaney. This was an extreme security breach. Officer Shields' complaints were dismissed by the Warden who told Officer Shields: "You are going to have to find some way to deal with it or you're going to lose your job."

26.     Between May 2022, and July 2022, Officer Shields faced numerous instances of harassment due to his race and because he reported Officer Hickman, including but not limited to:

      a.   Officer Shields' car was against vandalized and scratched with keys;

      b.   Officer Shields' found his lunch had spit and snot in it;

      c.   Officer Shields' lunch was frequently thrown in the trash;

      d.   Officer Shields found chewing tobacco spit into his locker;

      e.   Officer Shields found notes with racial slurs and "jokes" in his locker;

      f.   Officer Hickman threatened to "kick [Officer Shields] ass;"

      g.   Officer Hickman showed inmates Officer Shields' social media pages;

      h.   After reporting Officer Hickman's discrimination and harassment many times to supervising officers, Officer Hickman was assigned to train Officer Shields;

      i.   Officer Hickman told Officer Shields that he is a racist;

      j.   On or about July 27, 2022, Officer Shields was ordered to lock down his pod. Later another supervisor told him that the pod was not on lock down. When Officer Shields tried to explain what he was told earlier in the shift, he was yelled at and berated.

27.     Officer Shields witnessed numerous incidents of inmate abuse and reported it to the Warden and Deputy Warden. Including but not limited to the following incidents:

      a.   On or about May 14, 2022, an inmate flooded his cell. Officer Shields' supervisors started talking about how they were going to "fuck the [inmate] up"  The inmate was only approximately 5feet 2in tall and may have weighed 130 pounds at the

most. Once this inmate was strapped to the restraint chair. The Officers continued to assault him. He was punched in the face; his face was slammed into the windows of the cell. After placing him in the restraint chair, Officer Shields asked Sergeant Decanini, "isn't this excessive force," and Sergeant Decanini replied "what excessive force? "it's part of your job dude!" Officer Shields stated that he was going to report excessive force.  Sergeant Decanini shouted at Officer Shields, "Do it! Do you think anybody really cares? What do you think you are going to change something? You're not!"

b.      On or about June 10, 2022, Inmate Michael Washington, cell 106, was assaulted. Sergeant Darcy Figurel, entered the special needs unit and removed all the inmate's property for no reason at all. She took his mat and all of his blankets. Sergeant Figurel left the inmate with only a short metal frame to sleep on. The inmate was left in these conditions until late July. Due to the inmate being cold and having no place to sleep, the inmate would stand and talk to himself all night. This caused his legs to swell and start to burst with blood and blisters. Only then was he given his bed and blanket back. Inmate Washington was constantly bullied, racially and verbally abused by Officer Perkins and other corrections officers. Inmate Washington made numerous complaints to Officer Shields saying he was being antagonized by Officer Perkins. Officer Shields could hear Officer Perkins through the speaker, making negative remarks towards the inmate.

c.      On or about July 31, 2022, Sergeant Figurel ordered Officer Shields to remove the belongings of an inmate. The inmate was denied all blankets, sheets, and his mat to sleep on for approximately two weeks. Due to his inability to keep warm on the metal bunk, the inmate was forced to sleep standing. Officer Shields reported the incident to

the Warden and Deputy Warden White and then the harassment of Officer Shields intensified.

d.      On or about July 31, 2022, Officer Shields was informed that another officer spit on an inmate and took his belongings without provocation. Officer Shields encouraged the inmate to file a grievance.

e.      On or about July 31, 2022, Officer Shields was told by another inmate that an officer tased him and punched him in the face three times. Officer Shields observed that the inmate's face was swollen. Officer Shields reported the incident to management.

f.      On or about July 1, 2022, Officer Shields was informed by other inmates that one of the inmates in his pod was thinking of committing suicide. Officer Shields properly followed protocol and contacted Sergeant Dante Decanini. Sergeant Decanini proceeded to berate Officer Shields for "wasting" his time. Officer Shields then wrote a report about the incident. While writing the report, Sergeant Decanini shouted, "well, what the fuck are you writing? You're writing another report about me. Do you think anybody gives a fuck what you write? Nobody wants you here." Officer Shields asked Sergeant Decanini to step back and stop shouting at him. Sergeant Decanini sent Officer Shields home for the day. Officer Shields asked the other supervisor Sergeant Tyson for union representation and was denied.

28.    On or about August 19, 2022, Officer Shields was called into the office. Officer Shields had previously asked for time off to take his long-term partner to the emergency room. Officer Shields was granted the leave. Officer Shields was asked for a doctor's note for his leave. However, when he called his long-term partner she did not want to provide a note for privacy concerns. The Warden threatened Officer Shields' partner and told her that Officer Shields

would be fired if she did not provide a medical note. Officer Shields was disciplined even though other white officers were granted time off of work without presenting a doctor's note.

29.     On or about August 20, 2022, on Officer Shields' day off the Warden called him and required Officer Shields to work. Because the Warden had threatened Officer Shields' partner, Officer Shields' partner was overcome with stress and was briefly unavailable. This left Officer Shields without the proper childcare to come to work.

30.     On or about August 21, 2022, Officer Shields was required to go to the Beaver Co. Jail with his children. Officer Shields was two days away from completing probation and being a full union member with the protections of the collective bargaining agreement. Due to his long-term partner's refusal to provide her medical information to Beaver Co., Officer Shields was forced to sign a two-month extension on his probationary period. Officer Shields was told if he did not sign the extension he would be fired on the spot.

31.     On or about September 7, 2022, Officer Shields found that his vehicle had been scratched and spat on.

32.     On or about September 21, 2022, Sergeant Harris sent Officer Shields home after he tried to inform her that she was sending the wrong inmate to solitary confinement. Officer Shields was then presented with numerous alleged write-ups for incidents that allegedly happened in prior shifts.

33.     Officer Shields was not permitted to work after September 21, 2022.

34.     On or about October 4, 2022, Beaver Co. fired Officer Shields because of his race, for engaging in protected activity, and due to his complaints of inmate abuse.

35.     The temporal proximity to Officer Shields's discrimination complaints and his termination serve as evidence of causation.

36.     The discrimination and retaliation Officer Shields suffered while working for Defendant affected his self-esteem and caused him severe emotional distress.

37.     The Defendant's extreme and outrageous conduct warrants the imposition of substantial compensatory damages and punitive damages.

## CLAIMS FOR RELIEF

### COUNT I – Title VII - Race Discrimination and Hostile Work Environment

38.     Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

39.     As set forth above, Plaintiff identifies as a Black individual.

40.     Plaintiff experienced unwelcome conduct because of his race including the use of racial slurs and physical aggression that altered the terms and conditions of his employment.

41.     The conduct was severe or pervasive, was offensive to Plaintiff, and would have been offensive to a reasonable person.

42.     Defendant created a hostile work environment because of Plaintiff's race that would be considered intolerable to a reasonable person.

43.     As a direct and proximate result of Defendant's unlawful, willful, intentional discrimination against Plaintiff, Plaintiff incurred substantial losses, continuing in their nature, including but not limited to loss wages and loss of benefits, harm to his reputation, adverse effects on his career and diminished earning capacity.

44.     As a direct and proximate result of Defendant's unlawful, willful, and intentional discrimination and harassment against Plaintiff, Plaintiff suffered from physical problems that included but are not limited to emotional distress.

45.     By reason of Defendant's unlawful, willful, outrageous and intentional misconduct towards Plaintiff, Plaintiff is entitled to recover both compensatory and punitive damages in addition to actual damages.

46.     Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## COUNT II – Violation Title VII - Retaliation

47.     Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

48.     Defendant has intentionally and willfully engaged in a series of unlawful acts in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

49.     Defendant intentionally retaliated against Plaintiff for opposing Defendant's race discrimination as evidenced by, among other things, Defendant's actions and comments in 2022 and the temporal proximity of the actions and comments to Plaintiff's constructive discharge.

50.     By reason of Defendant's unlawful, willful, outrageous and intentional misconduct towards Plaintiff, Plaintiff is entitled to recover both compensatory and punitive damages in addition to actual damages.

51.     Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## COUNT III – Violation of 42 U.S.C. § 1983

52.     Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

53.    Defendant has intentionally and willfully engaged in a series of unlawful acts in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of Section 1983.

54.    Defendant's discriminatory conduct was used as a basis for employment decisions affecting Plaintiff.

55.    The conduct described above and herein was unlawful race discrimination committed by Defendant's employees, servants and/or agents who had the effective ability to influence employment actions that could affect Plaintiff, including but not limited to demotion, reduction in wages and termination of employment.

56.    As a direct and proximate result of Defendant's unlawful, willful, deliberate discrimination against Plaintiff, Plaintiff incurred substantial losses, continuing in their nature, including but not limited to loss wages and loss of benefits, harm to his reputation, adverse effects on his career and diminished earning capacity.

57.    As a direct and proximate result of Defendant's unlawful, willful and deliberate discrimination against Plaintiff, Plaintiff suffered from physical problems that included but are not limited to emotional distress and anxiety.

58.    By reason of Defendant's unlawful, willful, outrageous and deliberate misconduct towards Plaintiff, Plaintiff is entitled to recover both compensatory and punitive damages in addition to actual damages.

59.    Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

**COUNT IV – Violation of Whistleblower Law (43 P.S. §§ 1421-1428)**

60.     Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

61.     As set out in more detail above, Plaintiff Titus Shields made multiple good faith reports of wrongdoing.

62.     The wrongdoing Officer Shields reported was not merely technical or minimal.

63.     Instead, the Wrongdoing was criminal in nature or otherwise violated Pennsylvania law and regulations and/or the internal codes of conduct and ethics and other rules, procedures, and regulations of the Beaver Co. all of which were designed to protect members of the public and the Beaver Co. itself and regulate the proper functioning of the Beaver Co

64.     Thereafter, Defendant retaliated against Officer Shields in the terms, conditions, and privileges of his employment and ultimately terminated his employment.

65.     Defendant was demoted and then terminated because of, and in retaliation for, his protected whistleblowing activities.

66.     Defendant's "investigation" of Officer Shields' complaints was a sham and any non-retaliatory justification of his demotion or termination are mere pretext.

67.     Defendant's retaliation has continued even after it wrongfully and unlawfully terminated Officer Shields's employment by blackballing him in his industry and community.

68.     As a result, Officer Shields has suffered economic and non-economic damages.

**COUNT V – Wrongful Discharge in Violation of Public Policy**
**(Plead in the Alternative under Pa.R.C.P 1020(c))**

69.     Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

70.     At all times relevant and material hereto, it was the clearly defined public policy of the Commonwealth of Pennsylvania for corrections offers to report abuse of prisoners.

71.     By discharging Plaintiff from his employment because he reported suspected crimes and wrongdoing to Defendant, Defendant directly violated the public policy of the Commonwealth of Pennsylvania.

72.     Given the gravity of the alleged crimes, Defendant's discharge of Plaintiff from his employment was wanton, outrageous, and in reckless disregard for Plaintiff s rights under state law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

(a) Assume jurisdiction herein;

(b) Declare Defendant's conduct to be unlawful and an intentional violation of Plaintiff's rights;

(c) Award Plaintiff wage loss damages, including back pay and front pay, damages associated with the increased tax burden of any award, and lost fringe and other benefits of employment;

(d) Award Plaintiff compensatory damages under Title VII and 1983 and Whistleblower Law;

(e) Award Plaintiff punitive damages under Title VII and 1983 and Whistleblower Law;

(f) Award Plaintiff pre and post-judgment interest;

(g) Award Plaintiff costs and attorneys' fees; and

(h) Grant such other relief as the Court deems just and appropriate.

Respectfully Submitted,

*/s/ Rachel L. McElroy*
Rachel L. McElroy, Esq.
PA ID No. 321624
McElroy Law Firm, LLC
960 Penn Ave., #1001
Pittsburgh, PA 15222
Phone: 412-620-8735
rachel@mcelroylawfirm.com

Attorney for Plaintiff

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 8th day of January 2024 a true and correct copy of the within Complaint was served via electronic mail or U.S. Mail on all counsel of record, as follows:

Maria N. Pipak
Jones Passodelis
Gulf Tower, Suite 3410
707 Grant Street
Pittsburgh, PA 15219
T: 412-315-7272
Email: <u>mpipak@jonespassodelis.com</u>

*/s/ Rachel L. McElroy*
Rachel L. McElroy, Esq.